

**Signed and Filed: January 29, 2019**

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | ) Case No. 12-33036 HLB |
| | ) |
| JOHN C. PAXTON and ELIZABETH O. | ) Chapter 13 |
| PAXTON, | ) |
| | ) |
| Debtors. | ) |

**MEMORANDUM DECISION AFTER TRIAL**

## I.   INTRODUCTION

This case came before the court on August 17, 2018 for trial on Debtors John and Elizabeth Paxton's Motion for Contempt (the **"Motion"**).  [Dkt. 88.]  The Motion is directed at:  Mr. Brendan Quinlan, Mr. Andrew Zacks, Mr. James Kraus, Mr. Scott Freedman, Mr. William Murphy; and the law firms of Zacks Freedman & Patterson, P.C. and Dillingham & Murphy, LLP (collectively, the **"Respondents"**).

Mr. and Mrs. Paxton's Motion demands that the court hold the Respondents in contempt for violating the automatic stay imposed by section 362(a)[1] by:  commencing and prosecuting an action against Mr. Paxton in the San Francisco Superior Court, Case No.

_____

[1] Unless otherwise noted, all statutory citations shall refer to Title 11 of the United States Code, aka the "Bankruptcy Code," and any references to rules shall refer to the Federal Rules of Bankruptcy Procedure.

CGC-13-535986 (the **"Declaratory Relief Action"**); obtaining a judgment against Mr. Paxton in that action; and obtaining and recording an abstract of that judgment. The Paxtons' Motion also demands that the court declare the judgment in the Declaratory Relief Action void.

Still further, Mr. and Mrs. Paxton's Motion demands that the court hold one or more of the Respondents in contempt for violating the stay by commencing and prosecuting a small claims action against Mr. Paxton in San Francisco Superior Court, Case No. 15-851380 (the **"Small Claims Action"**); by obtaining a judgment against Mr. Paxton in the Small Claims Action; by obtaining and recording an abstract of that judgment; and by obtaining and serving an order in the Small Claims Action requiring Mr. Paxton to appear for a judgment debtor examination. Mr. and Mrs. Paxton also demanded that the court declare the judgment issued in the Small Claims Action void. In a detailed oral ruling issued after the conclusion of Mr. and Mrs. Paxton's case-in-chief, the court denied the Motion as it pertained to the Small Claims Action, pursuant to Rule 52(c) of the Federal Rules of Civil Procedure and Bankruptcy Rules 9014(c) and 7052. The court incorporates here by reference its oral ruling on the Motion as it pertains to the Small Claims Action.

At trial, Mr. James Michel appeared on behalf of Mr. and Mrs. Paxton; Mr. Mark Romeo and Mr. J. Cross Creason appeared on behalf of the Respondents. After both sides presented their

testimony and evidence, the court took the matter under submission.[2]

This memorandum decision constitutes the court's findings of facts and conclusions of law as required by Rule 52(a)(1) of the Federal Rules of Civil Procedure, which applies in this proceeding pursuant to Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure.

## II.    JURISDICTION

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and General Order 24 of the United States District Court for the Northern District of California.  Damage claims predicated on violations of the automatic stay arise under Title 11 and fall squarely within this court's subject matter jurisdiction.  *In re Davis*, 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995).  A claim for violation of the automatic stay constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), which pertains to matters concerning the administration of the estate.  *Taxel v. Electronic Sports Research* (*In re Cinematronics, Inc.*), 111 B.R. 892, 896 (Bankr. S.D. Cal. 1990).  Venue is proper under 28 U.S.C. § 1408(a).

---

[2] The court admitted Debtors' Exhibits 101 through 107, 112 through 121, 127 through 131, 136, 144, 146, and 147.  The court admitted Respondents' Exhibits A through C, G through I, L, and BB through EE, as well as Exhibits A1 through D4, H8 through K11, and M13.

**III. FINDINGS OF FACT**

**a. Background**

In 1986, Mr. Paxton entered into a residential lease agreement (Ex. 101 at 14; the "**Lease**"), pursuant to which he rented real property at 330 Presidio Avenue, Unit 5, San Francisco, California (the "Property"). At the time Mr. Paxton entered into the Lease, he had occupied the Property for more than ten years. Between 2005 and 2015, Mr. Brendan Quinlan owned the Property and served as Mr. and Mrs. Paxton's landlord, subject to the Lease.

The Lease allowed Mr. Paxton to approve or disapprove of the quality of repairs and replacement fixtures in the Property. [Ex. 101 at 15.][3] The events giving rise to the matter before this court result from Mr. Paxton's attempt to wield this power over Mr. Quinlan.

For nearly nine years, Mr. Paxton attempted to force Mr. Quinlan to make lavish alterations and improvements to the Property. During this time, Messrs. Paxton and Quinlan went back and forth in disagreement about the extent of repairs, scope of work, and quality of replacement materials and craftsmanship necessitated by the Lease. In 2009, Mr. Paxton reported the condition of the Property to the San Francisco Department of Building Inspection. As a result, the Department of Building Inspection issued a Notice of Violation, citing San Francisco Housing Code (the "**Code**") sections 1001, 1301, and 1306, which

---

[3] Ex. 101 at 15. "Landlord agrees to make repairs with reasonable quality materials and craftmanship. When items are replaced Landlord agrees to obtain Tenant's consent with regard to color, style, and quality."

obligated Mr. Quinlan to make certain repairs or improvements to the Property in order to bring into compliance with the Code.[4] [Ex. 101 at 26.]

Mr. Quinlan made several attempts to enter the Property to make the repairs. Apart from repairs to the heating ducts, windows, dishwasher, and garbage disposal, Mr. Paxton refused to allow Mr. Quinlan access to the Property to make many of the necessary repairs, citing his right to control the color, style, and quality of the repairs.

On October 26, 2012, Mr. and Mrs. Paxton filed their petition for relief under Chapter 13 of the Bankruptcy Code. The court confirmed Mr. and Mrs. Paxton's Chapter 13 Plan on May 16, 2013. When Mr. and Mrs. Paxton initially filed the petition, they did not list Mr. Quinlan in the schedules as a creditor, allegedly due to their month-to-month tenancy under the Lease, which somehow led Mr. Paxton to conclude that Mr. Quinlan was not a creditor. Indeed, Mr. Quinlan did not appear in the Paxton's schedules until amendments filed after the Paxtons filed this Motion. [Ex. M13.]

More than a year after the Paxtons filed their bankruptcy case, Mr. Quinlan filed the Declaratory Relief Action, in which he sought a determination that the Paxtons breached the Lease by

---

[4] See Ex. 101 at 26. The Notice of Violation issued in 2009 required the following repairs: (1) provide adequate water pressure to the shower room; (2) repair the damaged ceilings and walls in the eastern living room, bathroom, bedroom, and hall; (3) replace missing/cracked tiles in the tub room; (4) repair/replace deteriorated the shower floor and prevent water seepage from shower area; (5) eliminate the mold/mildew from wall and windows of eastern bedroom; (6) remove peeling paint from the ceiling in the western bedroom; (7) clean the heater vent system to ensure vents operating properly.

continuing to refuse Mr. Quinlan access to the Property. [Ex. 101 at 8-9.] Mr. Quinlan also sought to enjoin the Paxtons from continuing to refuse him access to the Property so that he could make the required repairs. [Ex. 101 at 7-8.] Mr. Quinlan did not seek monetary damages in the Declaratory Relief Action, other than attorneys' fees in the event he prevailed.

Represented by the law firm of Zacks & Freedman, P.C.[5], Mr. Quinlan succeeded in the Declaratory Relief Action. As prevailing party, the state court awarded Mr. Quinlan attorney's fees in the amount of $126,411.50 on June 2, 2015. [Ex. 103 at 2.] Shortly after entry of that judgment, Mr. Paxton appealed.

At no time during the Declaratory Relief Action did Mr. or Mrs. Paxton notify the state court, Mr. Quinlan, or opposing counsel of their pending Chapter 13 bankruptcy or assert the protection of the automatic stay.[6] It was not until July 2015 that Mr. Quinlan learned of the Paxtons' bankruptcy case, through a private investigator's report. [Trial Tr., 17:6-17.] Upon learning of pending bankruptcy case, Mr. Quinlan continued to defend himself on appeal, and later recorded abstracts of judgment, all the while believing his claim for attorneys' fees constituted a post-petition claim and not subject to the automatic stay.

---

[5] The law firm has since become Zacks, Freedman & Patterson, P.C.

[6] See, e.g., Ex. H at 5. The Paxtons had the opportunity to notify the state court of the pending bankruptcy case by selecting "Bankruptcy" in the section of the Case Management Statement that asked for information pertaining any matters that might have affected the state court's jurisdiction.

In August 2016, the court of appeals affirmed the judgment of the superior court in the Declaratory Relief Action and awarded Mr. Quinlan his attorney's fees and costs on appeal. After losing the appeal, Mr. Paxton notified bankruptcy counsel, Ms. Martha Simon, of the judgments, apparently for the first time. [Trial Tr., 79:1-4.]

Ms. Simon proceeded to negotiate a stipulation pertaining to Mr. Quinlan's attorney's fees on appeal. [Trial Tr., 118:5-119:4.] The parties stipulated that Mr. Quinlan would be entitled to fees of $25,750. [Ex. H8.] During the negotiations that resulted in this stipulation, Ms. Simon notified Mr. Quinlan's counsel of the Paxtons' pending chapter 13 case and warned that he should take no action to collect on the judgment while the bankruptcy case was pending. [Trial Tr., 118:21-119:1.] Ms. Simon did not otherwise raise the automatic stay, and never alleged that the litigation leading up to the stipulation had violated the automatic stay.

In early 2018, Mr. Quinlan engaged the law firm of Dillingham & Murphy for the purpose of enforcing his state court judgment. [Trial Tr.,14:24-15:19.] In February and March 2018, an attorney from Dillingham & Murphy recorded abstracts of judgment in Sonoma and San Francisco Counties, respectively. [Ex. 108, 110.] Following the recording of the abstracts of judgment, the Paxton's new counsel, Mr. James Michel, sent a letter to Dillingham & Murphy demanding that the abstracts of judgment be released. [Ex. 121.]

On May 4, 2018, Dillingham & Murphy submitted notices of release of the abstracts of judgment to the Recorders of the

County of San Francisco and the County of Sonoma. [Ex. 125.][7]
Notwithstanding Dillingham & Murphy's cooperation, this Motion
followed.

## IV.  CONCLUSIONS OF LAW

The Paxtons contend that the state court judgment is void as
a matter of law because their entry violated the automatic stay
and that Respondents should be held in contempt for knowingly
violating the stay.  Respondents assert that the automatic stay
does not apply to the judgment or, in the alternative, that the
Paxtons should be judicially estopped from asserting the
automatic stay, given that they never notified Respondents of the
pendency of their bankruptcy case and actively defended the
Declaratory Relief Action and prosecuted their appeal, all while
their bankruptcy case was pending.

### a. Prepetition Claim

Before the court can reach any conclusion as to whether a
stay violation occurred, it must first determine whether Mr.
Quinlan's claim accrued prepetition or post-petition.  Section
362 generally does not stay actions on account of post-petition
obligations.  *Cal. Franchise Tax Bd. v. Kendall* (*In re Jones*),
657 F.3d 921, 926-927 (9th Cir. 2011); *Severo v. Commissioner*,
586 F.3d 1213, 1216 (9th Cir. 2009).

The Bankruptcy Code defines "Claim" as a "right to payment,
whether or not such right is reduced to judgment, liquidated,
unliquidated, fixed, contingent, matured, unmatured, disputed,

---

[7] The notices of release that filed on May 4, 2018 were returned due to the fact that they were not notarized.  The notices were notarized on May 15, 2018.

undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Whether a claim exists generally is determined as of the date of the bankruptcy petition. 11 U.S.C. § 502(b). This "broadest possible definition" of claim is designed to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re SNTL Corp.*, 571 F.3d 826, 839 (9th Cir. 2009) (citing *In re Jensen*, 995 F.2d 925, 929 (9th Cir. 1993)).

Under Ninth Circuit law, "[a] claim is 'contingent' when 'the debtor will be called upon to pay [it] only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" *In re Castellino Villas, A.K.F. LLC,* 836 F.3d 1028, 1033 (9th Cir. 2016) (citing *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987)).

The Ninth Circuit applies the "fair contemplation" test for determining whether a contingent or unmatured claim has sufficiently arisen as of the petition date to constitute a prepetition claim. *SNTL*, 571 F.3d at 839. Under this test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Id.*

Courts applying the "fair contemplation" test have held that a contingent claim for ordinary breach of contract arises at the time of contracting, not at the time of a subsequent breach. *See Jenson*, 995 F.3d at 930; *In re Lombard Flats LLC*, No. 15-CV-00870-PJH, 2016 WL 1161593, at *9 (N.D. Cal. Mar. 23, 2016) (citing *Conseco, Inc. v. Schwartz* (*In re Conseco, Inc.*), 330 B.R. 673, 686 (Bankr. S.D. Cal. 2005)); *See also In re Russell*, 193

B.R. 568, 571 (Bankr. S.D. Cal. 1996) ("[i]t is within the fair contemplation of parties entering into a contract that the other party may breach it, or have made misrepresentations to induce the making of the contract. Thus, a contingent claim arises at that point in time, although it may never mature").

If the relevant contract has an attorney's fee provision, as does the Lease, then an award of attorney's fees based on that contract constitutes a contingent claim as of the date of the contract.  In this case, Mr. Quinlan's claims arose from the Lease and are, therefore, prepetition claims.  It does not matter that Mr. Quinlan's attorney's fees were awarded post-petition.

Even if there were no attorney's fees provision in the Lease, there would still be no doubt that the Declaratory Relief Action was based on a prepetition claim.  The record clearly indicates that the Declaratory Relief Action was based on Mr. Paxton's prepetition breach of contract.  Mr. Paxton's conduct began years before he and his wife sought bankruptcy relief and continued up through the Declaratory Relief Action.  This fits squarely within section 362(a)(1); Mr. Quinlan's Declaratory Relief Action could have been commenced many years prior to the filing of this bankruptcy case.

Respondents place a tremendous amount of reliance on the court of appeal's conclusion that Mr. Paxton's conduct was "continuous and continuously" accruing.  Respondents' reliance is misplaced.  The theory of continuous accrual, as applied by the state court, arose in the context of a statute of limitations analysis. [Ex. 104 at 15-17.]  It is well settled in Ninth

Circuit case law that the proper analysis of whether a stay violation occurred is guided by the "fair contemplation" approach. The Declaratory Relief Action arose out of Mr. Paxton's breach of the prepetition Lease. It was within fair contemplation, at the time the parties signed the Lease, that Mr. Paxton might breach that agreement, and that, if he did, his landlord might have a claim for attorney's fees and costs. Thus, as a matter of law, the Declaratory Relief Action constituted a prepetition contingent claim.

The court agrees with Mr. Paxton, however, that the filing of the Declaratory Relief Action violated the automatic stay, as did the recording of the abstract following entry of judgment.

The filing of a bankruptcy gives rise to an immediate and automatic stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Because the Declaratory Relief Action was based on pre-petition claims that could have been commenced prior to the date in which this bankruptcy case was filed, the filing of the Declaratory Relief Action violated the automatic stay.

That Respondents did not learn of the bankruptcy case until July of 2015 is immaterial to the issue of stay violations. The automatic stay is self-executing and becomes effective upon the filing of the bankruptcy petition. *Gruntz v. County of Los*

*Angeles* (*In re Gruntz*), 202 F.3d 1074, 1082 (9th Cir. 2000)(*en banc*)("[t]he automatic stay is self-executing, effective upon the filing of the bankruptcy petition"); *In re Peralta*, 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004)("the automatic stay is effective against the world, regardless of notice"); *In re Dunbar*, 245 F.3d 1058, 1064 (9th Cir. 2001)("[t]he stay applies to any creditor who might sue, and is not limited to creditors who are listed in the original petition").

Since the filing of the Declaratory Relief Action violated the automatic stay, the judgment obtained as a result of prosecuting that action is void, as a matter of law. *Peralta*, 317 B.R. at 389 ("[s]ince the automatic stay is effective against the world, regardless of notice, acts in violation of the stay are automatically void ab initio."); *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992) ("violations of the automatic stay are void, not voidable); *Dunbar*, 245 F.3d at 1063(same).

### b. Willful Violation of the Stay

The filing of a voluntary petition under the Bankruptcy Code constitutes an order for relief, staying prepetition actions against the debtor. 11 U.S.C. §§ 301, 362. Indeed, a violation of the automatic stay is equivalent to a violation of a court order and, thus, is punishable as contempt of court and may give rise to damages under section 362(k). *In re Dyer*, 322 F.3d 1178 (9th Cir. 2003) ("[T]here can be no doubt that the automatic stay qualifies as a specific and definite court order"); *See also In re Schwartz-Tallard*, 803 F.3d 1095, 1098 (9th Cir. 2015).

Damages are only available for "willful" stay violations. 11 U.S.C. § 362(k)("an individual injured by any *willful* violation

of a stay shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages").

In order for a stay violation to be "willful" the debtor bears the burden of proving by a preponderance of the evidence that: (1) the creditor knew of the automatic stay; and (2) its action were intentional. *Emp. Dev. Dept. v. Bertuccio*, 2011 WL 1158022, *3 (N.D. Cal. March 28, 2011)(confirming that debtor bears the burden of proof with respect to stay violations and that the standard of proof is preponderance of the evidence); *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002)("[a] willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional"). No specific intent is necessary, and a creditor's good faith belief that it was not violating the stay is irrelevant to the issue of willfulness. *Peralta*, 317 B.R. at 389.

The court has determined that there are three instances in which a willful stay violation might be argued: (1) Respondents' filing and prosecuting of the Declaratory Relief Action; (2) Respondents' defending of the appeal, after having knowledge of the bankruptcy; and (3) Respondents' recording of the abstracts of judgment. The court will address each separately.

### 1. Declaratory Relief Action

The Declaratory Relief Action was filed on December 9, 2013, after the automatic stay arose on October 26, 2012 with the filing of the Paxton's bankruptcy petition. The parties do not dispute that the Respondents did not learn of the bankruptcy

until July 2015, three years into the bankruptcy case and after
the state trial court proceedings were completed.  The court
finds, and the record supports, that at the time the Declaratory
Relief Action was filed, Respondents had no knowledge of the
bankruptcy filing and the automatic stay.  As stated above,
knowledge of the automatic stay is required for a determination
of willfulness.  Having determined that Respondents lacked
knowledge, the court must find that the filing of the Declaratory
Relief Action was not a willful violation of the automatic stay.

**2. Defending the Appeal**

The record does, however, show that Respondents learned of
the bankruptcy case in July 2015, just after Mr. Paxton appealed
the judgment entered in favor of Mr. Quinlan in the Declaratory
Relief Action.  Respondents defended the appeal, even after
learning of the automatic stay.

The Ninth Circuit has held that all appeals in proceedings
that were originally brought against the debtor are stayed,
without regard to whether the debtor is the appellant or
appellee. *Parker v. Bain*, 68 F.3d 1131, 1135-36 (9th Cir.
1995)([t]his Court, as well as seven other courts of appeals, has
concluded that the automatic stay can operate to prevent an
appeal by a debtor when the action or proceeding below was
against the debtor."); *Ingersoll-Rand Fin. Corp. v. Miller Mining
Co., Inc.,* 817 F.2d 1424, 1426 (9th Cir. 1987)("section 362
should be read to stay all appeals in proceedings that were
originally brought against the debtor, regardless of whether the
debtor is the appellant or appellee.")(quoting *Cathey v. Johns-
Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir. 1983)).

Although Respondents' actions, defending the appeal, were a continuation of a judicial proceeding that was in violation of the automatic stay, those actions did not violate the automatic stay. A party does not violate the stay by defending actions commenced by the debtor. *In re Palmdale Hills Property LLC*, 654 F.3d 868, 875 (9th Cir. 2011) ("[t]he stay does not . . . prevent a defendant from protecting its interests against claims brought by the debtor"); *In re Merrick*, 175 B.R. 333, 338 (B.A.P. 9th Cir. 1994) ("an equitable principle of fairness requires a defendant to be allowed to defend himself from [a debtor's claims] without imposing on him a gratuitous impediment . . . [t]he automatic stay should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate"); *In re Smith*, 2018 WL 669120, * 5 (B.A.P. 9th Cir. Feb. 1, 2018) ("[t]he stay does not apply to actions commenced by the debtor against a third party").

Therefore, Respondents did not violate the stay by defending the appeal. And certainly not for defending an appeal that should have been stayed in the first place. The court shares the concern expressed by the *Ingersoll-Rand* court in that there is an obvious unfairness if a debtor is allowed to appeal an adverse judgment rendered in an action against the debtor, yet, at the same time, the automatic stay would prevent a creditor from doing the same or appealing an appellate court judgment to a higher court. *Ingersoll-Rand*, 817 F.2d at 1426 (quoting *Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 n.2 (3d Cir. 1982).

### 3. Abstracts of Judgment

In early 2018, an attorney from Dillingham & Murphy caused abstracts of judgment to be recorded in two counties. As stated above, the recording of these abstracts constituted a clear violation of the automatic stay. The record also supports a finding that the recording of the abstracts was a willful violation of the stay. Respondents knew of the bankruptcy case when they intentionally took steps to record the abstracts. Respondents were even warned against taking collection action by the Paxton's bankruptcy counsel.

### c. Damages

#### 1. Damages for Filing and Prosecuting the Declaratory Relief Action

Respondents did not willfully violate the automatic stay. Therefore, no damages can be awarded under section 362(k).

#### 2. Damages for Defending the Appeal

Even if the court is incorrect in its conclusion that defending Mr. Paxton's appeal did not amount to a violation of the stay, the court believes Mr. Paxton is equitably estopped from demanding damages, as he prosecuted that appeal and never once raised the issue of the stay with Respondents or the court.

Equitable estoppel is a doctrine that precludes a party from asserting rights that would otherwise have been available. *See U.S. v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970) ("Equitable estoppel is a rule of justice which, in its proper field, prevails over all other rules"). Equitable estoppel will be invoked only if all four of the following elements are established: (1) The party to be estopped must know the facts;

(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Id*. The court finds that all four elements are shown.

First, at all times, Mr. Paxton knew of the bankruptcy case, and therefore knew of the automatic stay. This is true even if Ms. Simon never discussed the stay with him, as she is an experienced bankruptcy attorney who frequently litigates issues pertaining to the automatic stay. "Ordinarily, a lawyer is a client's agent and, consistent with agency law, clients 'are considered to have notice of all facts known to their lawyer-agent.'" *In re Perle*, 725 F.3d 1023, 1027 (9th Cir. 2013) (quoting *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141–42 (9th Cir. 1989)). Thus, Mr. Paxton is deemed to have the knowledge of his bankruptcy counsel as it relates to his case.

Second, Mr. Paxton's silence as to the bankruptcy case is fatal to his action for contempt. As stated in *Georgia-Pacific Co.*:

> Many kinds of activities — or inactivity — on the part of a defendant may permit the defense of equitable estoppel to be asserted against him. Obviously conduct amounting to fraud would suffice to raise an estoppel against a defendant, but it is clear that conduct far short of actual fraud will also suffice. A party's silence, for example, will work an estoppel if, under the circumstances, he has a duty to speak.

*Id.* At 97.  Mr. Paxton did not notify the state court or the Respondents of the bankruptcy case or that the automatic stay applied at any point during the litigation of the Declaratory Relief Action or his appeal therefrom.  To the contrary, Mr. Paxton continued to litigate, and litigate vigorously.  Given Mr. Paxton's conduct, Respondents had a right to believe there was no impediment to prosecuting the Declaratory Relief Action or defending the appeal.

Third, the parties do not dispute that Mr. Quinlan and the other Respondents did not learn of the pendency of Mr. and Mrs. Paxton's bankruptcy case until July 2015, after the trial court's judgment in the Declaratory Relief Action and after Mr. Paxton commenced his appeal.

Fourth and finally, Respondents' reliance on Mr. Paxton's conduct continuing to litigate in a non-bankruptcy forum and failing to assert to the automatic stay caused Mr. Quinlan to incur a significant amount of attorney's fees.  And Mr. Paxton's decision to appeal the ruling of the state trial court caused Mr. Quinlan to incur still more attorney's fees in defending that appeal.

Accordingly, the court finds that Mr. Paxton is estopped from seeking damages under section 362(k) arising from Respondents defending in Mr. Paxton's appeal.

### 3. Damages for Recording the Abstracts

Although the court finds that Respondents willfully violated the automatic stay by recording the abstracts, the court received no evidence as to what damages, if any, Mr. and Mrs. Paxton suffered as a result of the recording (followed by the nearly

immediate withdrawal) of the abstracts. Accordingly, the court will require further briefing on the issue of damages arising from the recording of the abstracts.

**V. CONCLUSION**

For the foregoing reasons, Mr. and Mrs. Paxton's Motion is **GRANTED** in part and **DENIED** in part, as follows:

1. The Motion is **GRANTED** to the extent it seeks a declaration that the judgment entered in the Declaratory Relief Action is void.

2. The Motion is **DENIED** to the extent it demands that the court find Respondents in contempt for violating the automatic stay by prosecuting the Declaratory Relief Action and in defending in Mr. Paxton's appeal and **DENIED** to the extent it seeks damages for this conduct.

3. The Motion is **GRANTED** to the extent it demands that the court find Respondents in contempt for violating the automatic stay by recording the abstracts.

4. The court **ORDERS** as follows with respect to the issue of the damages, if any, incurred by the Paxtons as a result of the recording (and nearly immediate withdrawal) of the abstracts:

a. On or before February 28, 2019, Mr. and Mrs. Paxton shall file and serve one or more declarations detailing the damages they allegedly suffered as a result of the recording of the abstracts. At least one of these declarations shall set forth the attestations of their counsel as to the work done and fees incurred in addressing the abstracts. Counsel's declaration

shall introduce and authenticate time records in support of any alleged attorneys' fees and costs.

            b.   On or before February 28, 2019, Mr. and Mrs. Paxton shall file and serve a brief addressing their entitlement to damages arising from the recording of the abstracts. This brief shall not exceed 5 pages, absent prior leave or court.

            c.   On or before March 29, 2019, Respondents shall file and serve a brief in reply the Paxton's on the issue of damages arising from the recording of the abstract. Respondents' reply brief shall not exceed 5 pages, absent prior leave of court. Should Respondents wish to file and serve declarations regarding the issue of damages arising from the recording of the abstracts, they shall do so on or before March 29, 2019.

    5.   Following the submission of the foregoing briefs, the court will either take the damages issue under submission or will set the matter for argument, as it sees fit. See B.L.R. 9013-2(a).

**\*\*END OF ORDER\*\***

## Court Service List

[None]